FILED
 2010 Jul-01 AM 10:02
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **BUTLER FARMS, INC.,** | ) |
| PLAINTIFF, | ) |
| VS. | )   2:10-cv-982-JHH |
| **CHAD WIGGS; and,** | ) |
| **TYSON FARMS, INC.,** | |
| | ) |
| DEFENDANTS. | |

## MEMORANDUM OPINION

This case is before the court on Plaintiff's Motion to Remand (Doc. #7) filed on May 14, 2010. For the reasons outlined below, the motion is due to be granted.

**I.   INTRODUCTION AND PROCEDURAL HISTORY**

In this dispute, Plaintiff Butler Farms, Inc. ("Butler") claims breach of a written contract (Count One), negligence (Count Two), wantonness (Count Three), fraud (Count Four), suppression (Count Five), negligent hiring and supervision (Count Six), wanton hiring and supervision, (Count Seven), civil conspiracy (Count Eight), and intentional interference with a business relationship (Count Nine). All claims are brought against Tyson Farms, Inc. ("Tyson") and some are brought against Chad Wiggs, an individual. (*See generally* Doc. #1 at Compl.). The claims appear to stem from a "Broiler Production Contract" Butler entered into with Tyson on or about

January 1, 2006. (*See id.* at ¶ 6). Butler alleges that upon execution of the contract, it satisfactorily began fulfilling its contractual obligations but that in February of 2009, Tyson "failed or refused to provide chickens to Butler, in breach of Tyson's Contract with Butler." (*Id.* at ¶¶ 8-10).

On April 14, 2010, Defendant Tyson removed this lawsuit from the Circuit Court of Blount County, Alabama to this court. (*See* Doc. #1). Defendant's removal petition is premised upon diversity jurisdiction and maintains that Plaintiff has fraudulently joined Chad Wiggs, an employee of Tyson, in this action, and, therefore, this court should disregard the Alabama citizenship of Wiggs in assessing whether there is removal jurisdiction. (*See* Doc. #1 at ¶¶ 6-21). Plaintiff's motion to remand argues there is not complete diversity between the parties because Chad Wiggs is a properly joined defendant. (*See* Doc. #7 at 2-7).

The parties have each submitted briefs (*see* Docs. #7, 9, 10, 11) in support of their respective positions and the matter is now ripe for review (*see* Doc. #8).

**II.   ANALYSIS**

   **A.   Standard Applicable to Fraudulent Joinder Cases**

The court has studied the parties' arguments on the issue of fraudulent joinder, including the cases offered in support of their respective positions. The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction

2

when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[1] The standard is onerous because, absent fraudulent joinder, the plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to choose how and where he will fight his battle.

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962). The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedures* §

---

[1] Under the second prong of the fraudulent joinder test, the court must determine whether Plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction. No issue related to the second prong exists in this case. (*See* Doc. #1 at 3, ¶ 9). Accordingly, the court limits its analysis to the first inquiry.

3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Id.* at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," requiring clear and convincing evidence. Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a *possibility* that a claim exists. The *Crowe* court reiterated:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under FED. R. CIV. P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id*. at 550. Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id*. at 548-49. **When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.** *See id.* 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Id*. at 1538 (emphasis added).

More recently, in *Tillman v. R.J. Reynolds Tobacco*, 253 F.3d 1302 (11th Cir. 2001), the Eleventh Circuit emphasized the limits of the fraudulent joinder analysis, stating:

> For removal under 28 U.S.C. § 1441 to be proper, no defendant can be a citizen of the state in which the action was brought. 28 U.S.C. § 1441(b). Even if a named defendant is such a citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. *See Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superceded by statute on other grounds as stated in Wilson v. General Motors Corp.*, 888 F.2d 779 (11th Cir. 1989). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287 (emphasis in original).

*Id.* at 1305; *see also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.").

"A claim of fraudulent joinder must be pleaded with particularity, and supported by clear and convincing evidence." *Parks*, 308 F.2d at 478 (citations omitted). "The burden of the removing party is a 'heavy one.'" *Crowe*, 113 F.3d at

5

1538 (citation omitted). Regarding the application of the fraudulent joinder standard, the Eleventh Circuit has explained:

> In terms of this circuit's law, the main point for us is this one: For a plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law *might* impose liability on the facts involved.'

*Crowe*, 113 F.3d at 1541-42 (citation omitted) (emphasis added in *Crowe* opinion).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

> The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380-81 (11th Cir. 1998).

### B.   Application of the Fraudulent Joinder Standard to this Case

Plaintiff Butler's claims are: breach of a written contract (Count One), negligence (Count Two), wantonness (Count Three), fraud (Count Four), suppression (Count Five), negligent hiring and supervision (Count Six), wanton hiring and

supervision, (Count Seven), civil conspiracy (Count Eight), and intentional interference with a business relationship (Count Nine). (Doc. #1 at Compl. ¶¶ 15-56). Counts One, Two, Three, Eight, and Nine are specifically pled against Chad Wiggs, an individual, and Tyson Farms.[2] (Doc. #1 at Compl. ¶¶ 15-24, 51-56). Counts Four through Seven are specifically pled only against Tyson.[3] (Doc. #1 at Compl. ¶¶ 25-50). The Complaint sets out an April 11, 2009 conversation between Wiggs and David Butler (Butler's President) in which Wiggs allegedly stated: (1) that he and/or Tyson decided to no longer provide chickens to Butler and; (2) that he did not have to give a reason why he and/or Tyson had decided not to provide chickens to Butler. (Doc. #1 at Compl. ¶ 12). It is on this alleged conversation that the claims against Wiggs purport to lie. (*See* Doc. #7 at 5).

---

[2] Even if only one of Plaintiff's claims survives the test regarding fraudulent joinder, the court lacks diversity jurisdiction, and the case is due to be remanded.

[3] Defendant's Opposition to Plaintiff's Motion to Remand (Doc. #9) bases a section of its brief on the fact that the Complaint does not purport to state claims for fraud or suppression against Wiggs. (*See* Doc. #9 at 2-5). Plaintiff's Response to Tyson's Opposition to Remand (Doc. #10) admits that: "despite the intent to name Wiggs (and, thus, the belief the averments named Wiggs as a defendant had been made) in these counts [Four and Five, fraud and suppression, respectively], the pleadings as to these particular counts do not name Wiggs individually (Counts Four and Five). However, this oversight is not fatal to Plaintiff's 'Motion to Remand' as there are other counts against Wiggs that are clearly asserted against him and to which Tyson does not argue in its 'Opposition' that there is no possibility that any of these other counts have merit." (Doc. #10 at 2). In resolving the issue of removal jurisdiction, this court is bound to consider the allegations of the complaint at the time of the removal. *See Tillman*, 253 F.3d at 1306 n.1 ("For purposes of considering the specific jurisdictional question before us, we consider only the original complaint, however, because the question of diversity subject matter jurisdiction is determined on the plaintiff's pleadings at the time of removal.") (internal citations omitted)).

As to Count One, breach of contract, no claim can lie against Wiggs because Wiggs was not a party to the Broiler Agreement – the Complaint specifically states that Butler entered into a written contract with Tyson. (*See* Doc. #1 at 3; *see also* Doc. #7 at 5-7). As a non-party to the Broiler Agreement, Wiggs cannot be said to have breached it, *see Brown v. Fogarty*, 221 Ala. 283, 285 (Ala. 1930), and Plaintiff makes no attempt in its Motion to Remand to argue that Wiggs was somehow a party to the contract. (*See* Doc. #7 at 5-7; *see also* Doc. #3-4). Therefore, Count One of the Complaint does not support the Motion to Remand. *See Bullock v. United Benefit Ins. Co.*, 165 F.Supp.2d 1255, 1257 (M.D. Ala. 2001).

The Second and Third Counts of the Complaint, however, for negligence and wantonness, are arguable ones under Alabama law against Wiggs. Butler alleges in the Complaint that "Wiggs ... owed a duty to Butler based upon the circumstances and/or the law of the State of Alabama" (Doc. #1 at Compl. ¶ 19) and that "[t]he actions of . . . Wiggs . . . indicate a conscious omission of the duty owed by [him], and with knowledge of the circumstances and with a reckless disregard for the consequences of said actions." (Doc. #1 at Compl. ¶ 23). Butler alleges that Wiggs' duty arises not only based on his participation as an agent, but also as "one who volunteer[ed] to act, though under no duty to do so . . ." (Doc. #7 at 6) (citing *Dailey*

8

*v. City of Birmingham*, 378 So.2d 728, 729 (Ala. 1979), *aff'd, Bryan v. Alabama Power Co.*, 20 So.3d 108, 119 (Ala. 2009)).

As previously established, Wiggs was not a party to the contract, and therefore no cause of action can be properly based on any duty arising out of the contract. *See Pittman v. Mast Advertising Publ'g, Inc.*, 619 So.2d 1377, 1379 (Ala. 1993) ("[T]he general rule is that where the charge of negligence is based upon a breach of duty arising out of contractual relations, no cause of action arises in favor of one not in privity to such contract.") (internal citations omitted); *see also Weston v. Nat'l Mfrs. & Stores Corp.*, 45 So.2d 459, 463 (Ala. 1950 ("It is broadly true that where the charge of negligence is based upon a breach of duty arising out of contractual relations, no cause of action arises in favor of one not in privity to such contract."). The duty must arise from someplace else, *i.e.* as argued by Butler, a voluntary assumption of duty. The facts that Butler points to for this voluntary assumption of duty are these: that Wiggs and Plaintiff had a telephone conversation and that Wiggs told Plaintiff that Tyson had decided to no longer provide chickens to Plaintiff and that Defendants did not have to give a reason for refusing to provide the chickens. (*See* Doc. #1 at Compl. ¶ 12; *see also* Doc. #7 at 6) ("By declaring that he, Wiggs, had decided not to place chickens with Butler (and that he, Wiggs, didn't have to give a reason why when asked for one by David Butler) Wiggs voluntarily assumed a duty

that existed 'independent of any duty that could have been created under the Broiler Agreement.' – a duty to tell the truth."). The majority of cases cited by Plaintiff in support of this additional duty based not in contract are grounded in claims for fraud and suppression, claims not brought against Wiggs in the Complaint. (*See* Doc. #1 at Compl. and Doc. #10 at 2; *see also* footnote 4, *supra*). But there does exist a cause of action for negligence arising out of common law for the negligent performance of a voluntary undertaking. *See Beasley v. MacDonald Engineering Co.*, 249 So.2d 844, 846 (Ala. 1970).

> The question is, as we see it, whether or not the complaint states a cause of action under the common law arising from the negligent performance of a voluntary undertaking. This theory originated with the case of *Coggs v. Bernard*, 2 Lord Raymond 909. Since then it has come to be recognized that liability can arise from the negligent performance of a voluntary undertaking. This state, at least as early as 1911, recognized that "when a person undertakes an employment, which requires care and skill, whether for reward or not, a failure to exert the measure of care and skill appropriate to the measure of such employment is negligence for which an action will lie." *Parker & Bro. v. Hodgson*, 172 Ala. 632, 635, 55 So. 818, 819.

Similarly, in a concurring opinion involving negligence in a voluntary undertaking, Justice Jones wrote:

> It is in the voluntary undertaking where the parameters of the duty must be established through close scrutiny of the circumstances. This issue will generally be a question of fact. The rule is well established that common law liability to third parties can arise from the negligent performance of even a voluntary undertaking.

*Fireman's Fund American Ins. Co. v. Coleman*, 394 So. 2d 334, 349 (Ala. 1980) (citations omitted). Defendant, while arguing that the duty has not been fleshed out,[4] does not refute that Plaintiff's Complaint avers that Wiggs acted in his individual capacity (in addition to as an agent of Tyson) and had a conversation with Butler in which he implicated himself. Although discovery may yield no set of facts to support such a claim, this court cannot fairly state that there is no "possibility that a state court would find that the complaint states a cause of action" against Wiggs for negligence.

Although the court need not continue its analysis, it notes that the Motion to Remand also survives on Count Eight for civil conspiracy and Count Nine for intentional interference with business relations. The Complaint alleges that Wiggs acted *both* individually and within the line and scope as an officer, employee, agent or assign of Defendant Tyson Farms, Inc., outlines a conversation Wiggs had with the President of Butler, and the parties each, for different reasons, express that Wiggs had an economic interest in the contract that existed between Butler and Tyson. (*See* Doc. #1 at 6, ¶ 18, n.1; *see also* Doc. #10 at 4 ("Butler expects to be able to show that

---

[4] *See Dillard v. HomEq Servicing*, 2005 WL 1241120, No. Civ.A. 3:05CV12-W at *3, n. 5 ("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.") (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 852 (3d. Cir. 1992)).

Wiggs' own independent financial interests was the motivating force that caused Wiggs to interfere with the contract between the Plaintiff and Tyson, and that Wiggs' interest was dependant on the relationship between Plaintiff and Tyson failing.")). *See Dickerson v. Alachua County Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("[I]t is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself."); *see also Tom's Foods, Inc. v. Carn*, 896 So.2d 443, 454 (Ala. 2004) ("[T]he alleged interferer is not a stranger to a contract and thus not liable for tortious interference where the alleged interferer was the agent for one of the parties to the contract . . . and all the purported acts of interference were done within the scope of the interferer's duties as agent."). Thus, this court, restricting its analysis to whether "there is **even a possibility** that a state court would find that the" plaintiff has stated a claim against the resident defendant, *Crowe*, 113 F.3d at 1538 (emphasis added), finds that to conclude that fraudulent joinder exists as to these claims would be an impermissible overreach into the substance of those claims.

Therefore, considering the record and the status of the law before it and drawing all reasonable inferences in favor of Plaintiff, the court determines that

Plaintiff has not fraudulently joined Chad Wiggs in this action and that, as a result, the entire case is due to be remanded to the Circuit Court of Blount County.

## III. CONCLUSION[5]

For the reasons stated above, the court finds that Defendant Tyson Farms, Inc. has not met its heavy burden of demonstrating by clear and convincing evidence that the non-diverse defendant, Chad Wiggs, was fraudulently joined in this action. Accordingly, this court lacks subject matter jurisdiction based upon diversity, and Plaintiff's Motion to Remand (Doc. #7) is due to be granted. The court will enter an order consistent with this Memorandum Opinion.

**DONE** this the   1st   day of July, 2010.

*James H. Hancock*
SENIOR UNITED STATES DISTRICT JUDGE

---

[5]The nature of the court's decision on remand means that it need not decide the other arguments advanced by Defendants in support of their removal of this action. (*See* Doc. #1 at 8-11 and Doc. #11).